FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Nov 12, 2021

SEAN F. McAVOY, CLERK

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| ROGER R.,[1] | No.    4:20-cv-5219-EFS |
| Plaintiff, | |
| v. | **ORDER DENYING PLAINTIFF'S SUMMARY-JUDGMENT MOTION AND GRANTING DEFENDANT'S SUMMARY-JUDGMENT MOTION** |
| KILOLO KIJAKAZI, Acting Commissioner of Social Security, | |
| Defendant. | |

Plaintiff Roger R. appeals the denial of benefits by the Administrative Law Judge (ALJ). The ALJ rationally determined that when Plaintiff abstains from substances his limitations are less severe, thereby permitting him to sustain work consistent with the articulated residual functional capacity. After reviewing the record and relevant authority, the Court denies Plaintiff's Motion for Summary

---

[1] To protect the privacy of the social-security Plaintiff, the Court refers to him by first name and last initial or as "Plaintiff." *See* LCivR 5.2(c).

ORDER RULING ON CROSS SUMMARY-JUDGMENT MOTIONS - 1

Judgment, ECF No. 13, grants the Commissioner's Motion for Summary Judgment, ECF No. 18, and affirms the administrative law judge's (ALJ) decision.

## I.    Five-Step Disability Determination

A five-step sequential evaluation process is used to determine whether an adult claimant is disabled.[2] Step one assesses whether the claimant is engaged in substantial gainful activity.[3] If the claimant is engaged in substantial gainful activity, benefits are denied.[4] If not, the disability evaluation proceeds to step two.[5]

Step two assesses whether the claimant has a medically severe impairment or combination of impairments that significantly limit the claimant's physical or mental ability to do basic work activities.[6] If the claimant does not, benefits are denied.[7] If the claimant does, the disability evaluation proceeds to step three.[8]

Step three compares the claimant's impairment or combination of impairments to several recognized by the Commissioner as so severe as to preclude

---

[2] 20 C.F.R. §§ 404.1520(a), 416.920(a).

[3] *Id.* §§ 404.1520(a)(4)(i), 416.920(a)(4)(i).

[4] *Id.* §§ 404.1520(b), 416.920(b).

[5] *Id.* §§ 404.1520(b), 416.920(b).

[6] *Id.* §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii).

[7] *Id.* §§ 404.1520(c), 416.920(c).

[8] *Id.* §§ 404.1520(c), 416.920(c).

substantial gainful activity.[9] If an impairment or combination of impairments meets or equals one of the listed impairments, the claimant is conclusively presumed to be disabled.[10] If not, the disability evaluation proceeds to step four.

Step four assesses whether an impairment prevents the claimant from performing work he performed in the past by determining the claimant's residual functional capacity (RFC).[11] If the claimant can perform past work, benefits are denied.[12] If not, the disability evaluation proceeds to step five.

Step five assesses whether the claimant can perform other substantial gainful work—work that exists in significant numbers in the national economy—considering the claimant's RFC, age, education, and work experience.[13] If so, benefits are denied. If not, benefits are granted.[14]

---

[9] *Id.* §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii).

[10] *Id.* §§ 404.1520(d), 416.920(d).

[11] *Id.* §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv).

[12] *Id.* §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv).

[13] *Id.* §§ 404.1520(a)(4)(v), 416.920(a)(4)(v); *Kail v. Heckler*, 722 F.2d 1496, 1497-98 (9th Cir. 1984).

[14] 20 C.F.R. §§ 404.1520(g), 416.920(g).

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

The claimant has the initial burden of establishing he is entitled to disability benefits under steps one through four.[15] At step five, the burden shifts to the Commissioner to show the claimant is not entitled to benefits.[16]

If there is medical evidence of drug or alcohol addiction, the ALJ must then determine whether drug or alcohol use is a material factor contributing to the disability.[17] To determine whether drug or alcohol use is a material factor contributing to the disability, the ALJ evaluates which of the current limitations would remain if the claimant stopped using drugs or alcohol and then determines whether any or all of the remaining limitations would be disabling.[18] Social Security claimants may not receive benefits if the remaining limitations without drug or alcohol use would *not* be disabling.[19] The claimant has the burden of showing that their drug or alcohol use is not a material contributing factor to disability.[20]

---

[15] *Parra v. Astrue*, 481 F.3d 742, 746 (9th Cir. 2007).

[16] *Id.*

[17] 20 C.F.R. §§ 404.1535(a), 416.935(a).

[18] 20 C.F.R. §§ 404.1535(b)(2), 416.935(b)(2).

[19] 42 U.S.C. § 423(d)(2)(C); 20 C.F.R. §§ 404.1535, 416.935; *Sousa v. Callahan*, 143 F.3d 1240, 1245 (9th Cir. 1998).

[20] *Parra*, 481 F.3d at 748.

ORDER RULING ON CROSS SUMMARY-JUDGMENT MOTIONS - 4

## II.    Factual and Procedural Summary

Plaintiff filed Title 2 and 16 disability applications, alleging a disability onset date of February 1, 2016.[21] His claims were denied initially and upon reconsideration.[22] An administrative hearing was then held by video before Administrative Law Judge Lori Freund.[23]

The ALJ denied Plaintiff's disability claims, finding:

- Step one: Plaintiff had not engaged in substantial gainful activity since February 1, 2016, the alleged onset date.

- Step two: Plaintiff had the following medically determinable severe impairments: antisocial personality disorder, polysubstance use disorder with substance-related psychosis, and cannabis abuse disorder.

- Step three: Plaintiff met the criteria for Listing 12.08 if his substance abuse was considered; however, if he stopped his substance use, he would not meet or equal a listing.

- RFC: Plaintiff had the RFC, if he stopped substance use, to perform a:

  full range of work at all exertional levels but with the following nonexertional limitations: he is limited to simple and repetitive tasks. He should work away from the general public. He can have superficial interaction with supervisors

---

[21] AR 212–23.

[22] AR 143–46, 151–56.

[23] AR 37–76.

and coworkers, however no tandem tasks could be performed. He could handle occasional changes in the work setting. He should avoid any fast-paced production rate or fast-paced case work.

- Step four: If Plaintiff stopped substance use, he was capable of performing past relevant work as a vegetable harvest worker.

- Step five: considering Plaintiff's RFC (if he stopped substance use), age, education, and work history, Plaintiff could perform work that existed in significant numbers in the national economy, such as field crop farm worker, kitchen helper, and small parts assembler.[24]

When assessing the psychological medical-opinion evidence, the ALJ found:

- the reviewing opinion of Stephen Rubin, Ph.D. very persuasive.

- the reviewing opinion Dana Harmon, Ph.D. persuasive.

- the reviewing opinions of Bruce Eather, Ph.D., and Michael Regets, Ph.D. not persuasive at step three but otherwise generally persuasive.

- the examining opinions of John Arnold, Ph.D., N.K. Marks, Ph.D., David Morgan, Ph.D., and the reviewing opinion of Aaron Burdge, Ph.D. not persuasive.[25]

---

[24] AR 14–34.

[25] AR 25–28. The ALJ also found the state medical consultants' opinions as to Plaintiff's exertional abilities, which are not at issue, persuasive.

The ALJ also found Plaintiff's medically determinable impairments could reasonably be expected to cause some of the alleged symptoms, but his statements concerning the intensity, persistence, and limiting effects of those symptoms were not consistent with the medical evidence and other evidence.[26]

Plaintiff requested review of the ALJ's decision by the Appeals Council, which denied review.[27] Plaintiff timely appealed to this Court.

### III.    Standard of Review

It is the role of the ALJ to consider the conflicting evidence and articulate the findings that support the ALJ's disability or non-disability decision.[28] In comparison, the Court's role when reviewing the Commissioner's final decision is limited.[29] After considering the entire record, the Court sets aside the Commissioner's final decision "only if it is not supported by substantial evidence or is based on legal error."[30] Substantial evidence is "more than a mere scintilla but

---

[26] AR 23–24.

[27] AR 1–6.

[28] *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012).

[29] 42 U.S.C. § 405(g).

[30] *Hill v. Astrue*, 698 F.3d 1153, 1158 (9th Cir. 2012); *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007) (The court "must consider the entire record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion," not simply the evidence cited by the ALJ or

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."[31]

Further, the Court may not reverse an ALJ decision due to a harmless error.[32] An error is harmless "where it is inconsequential to the ultimate nondisability determination."[33] The party appealing the ALJ's decision generally bears the burden of establishing harm.[34]

## IV.    Analysis

### A.    Medical Opinions: Plaintiff fails to establish consequential error.

Plaintiff argues the ALJ erred by finding the examining opinions of Dr. Arnold, Dr. Marks, and Dr. Morgan not persuasive and by misrepresenting Dr. Fanto's reports.

---

the parties.) (cleaned up); *Black v. Apfel*, 143 F.3d 383, 386 (8th Cir. 1998) ("An ALJ's failure to cite specific evidence does not indicate that such evidence was not considered[.]").

[31] *Id.* at 1159 (quoting *Sandgathe v. Chater*, 108 F.3d 978, 980 (9th Cir. 1997)).

[32] *Molina*, 674 F.3d at 1111.

[33] *Id.* at 1115 (cleaned up).

[34] *Shinseki v. Sanders*, 556 U.S. 396, 409–10 (2009).

ORDER RULING ON CROSS SUMMARY-JUDGMENT MOTIONS - 8

1.    <u>Standard</u>[35]

An ALJ must consider and evaluate the persuasiveness of all medical opinions or prior administrative medical findings.[36] The ALJ need not however "give any specific evidentiary weight . . . to any medical opinion(s)."[37] The factors for evaluating the persuasiveness of medical opinions and prior administrative medical findings include, but are not limited to, supportability, consistency, relationship with the claimant, and specialization.[38] Supportability and consistency are the most important factors, and the ALJ is required to explain how both of these factors were considered.[39] The ALJ may, but is not generally required to, explain how the other factors were considered.

2.    <u>Dr. Rubin</u>

Dr. Rubin, a psychologist, reviewed the medical evidence of record and testified at the administrative hearing. Plaintiff argues the ALJ erred as to Dr. Rubin's opinion. First, Plaintiff argues the ALJ failed to account for Dr. Rubin's

---

[35] Revisions to Rules Regarding the Evaluation of Medical Evidence, 2017 WL 168819, 82 Fed. Reg. 5844-01 (Jan. 18, 2017); 20 C.F.R. §§ 404.1520c, 416.920c.

[36] 20 C.F.R. §§ 404.1520c(a), (b), 416.920c(a), (b).

[37] Revisions to Rules, 2017 WL 168819, 82 Fed. Reg. 5844, at 5867-68; *see* 20 C.F.R. §§ 404.1520c(a), 416.920c(a).

[38] 20 C.F.R. §§ 404.1520c(c)(1)–(5), 416.920c(c)(1)–(5).

[39] *Id*. §§ 404.1520c(b)(2), 416.920c(b)(2).

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

opinion that Plaintiff's antisocial personality disorder would cause conflicts with supervisors. In this regard, Dr. Rubin testified that Plaintiff "could have conflict with the public or supervisors or colleagues" as "he's demonstrated that for years," and "it's best to have limited contact with supervisors or the public and let him do a job which really minimizes his interpersonal contacts."[40] Contrary to Plaintiff's argument, the ALJ rationally incorporated Dr. Rubin's opined limitations resulting from Plaintiff's antisocial personality disorder into the RFC.[41] The RFC limits Plaintiff to "simple and repetitive tasks . . . away from the general public . . . with superficial interaction with supervisors and coworkers . . . [,] no tandem tasks," and with only "occasional changes in the work setting [and no] fast-paced production rate or fast-paced case work."[42] The RFC rationally accounts for Dr. Rubin's opined social limitations.

Second, Plaintiff argues the ALJ failed to distinguish substance use contributing to Plaintiff's disability *from* any disability remaining absent substance use. But whether Plaintiff's methamphetamine use increased Plaintiff's psychotic symptomology was discussed at the administrative hearing. Dr. Rubin acknowledged it is possible that Plaintiff has more psychosis than he had years ago

---

[40] AR 54, 49.

[41] *See Rounds v. Comm'r Soc. Sec. Admin.*, 807 F.3d 996, 1006 (9th Cir. 2015).

[42] AR 23.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23

due to his methamphetamine use.[43] Nonetheless, Dr. Rubin maintained that the record did not reflect that Plaintiff suffers from psychotic behavior and symptomatology during periods of sobriety and medication. Therefore, Dr. Rubin opined that Plaintiff's exacerbated psychosis was *caused by* his substance use.[44]

The ALJ relied heavily on Dr. Rubin's opinion to find that Plaintiff's substance use contributed to his disability, and that his disability did not remain in the absence of substance use. The ALJ's finding in this regard is rational and supported by substantial evidence. The record offered much conflicting evidence for the ALJ to parse as to Plaintiff's substance use and the cause for his symptoms.[45] The ALJ rationally found—based largely on Dr. Rubin's testimony and the underlying medical records—that Plaintiff's limitations resulting from his antisocial personality disorder, polysubstance use disorder with substance-related psychosis, and cannabis use disorder were exacerbated when he used substances.

Plaintiff fails to establish the ALJ erred as to Dr. Rubin's opinion.

---

[43] AR 51.

[44] AR 47–56.

[45] *See, e.g.*, AR 24–25 (citing records indicating generally normal findings and other records indicating decreased functioning after admitted drug use or cessation of medication).

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

   3.   Dr. Arnold, Dr. Marks, Dr. Morgan, and Dr. Fanto

   Plaintiff challenges the ALJ's consideration of the medical reports authored by Dr. Fanto and the medical opinions authored by Dr. Arnold, Dr. Marks, and Dr. Morgan.

   Dr. Fanto conducted two competency evaluations—one in November 2016 and one in February 2017—for use by the county court to determine whether Plaintiff was competent to stand trial for criminal charges.[46] Dr. Fanto initially found Plaintiff was not competent to stand trial and he recommended that Plaintiff be placed in court-ordered inpatient treatment.[47] Plaintiff was transferred from Franklin County jail, where he had been housed since September 2016, to Eastern State Hospital in December 2016.[48] Upon reevaluation in February 2017, Dr. Fanto determined that Plaintiff had psychologically improved and was competent to

---

[46] AR 394–412. Plaintiff acknowledges that Dr. Fanto did not offer a "medical opinion" as that term is defined for disability purposes. Therefore, Dr. Fanto's reports are not medical opinions for which the ALJ needed to make persuasiveness findings.

[47] AR 405–12.

[48] AR 541, 643.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23

stand trial.[49] Plaintiff was returned to Franklin County jail and was released in March 2017.[50]

Dr. Arnold, Dr. Marks, and Dr. Morgan each psychologically evaluated Plaintiff for disability-assessment purposes: Dr. Arnold in August 2016, Dr. Marks in April 2017 and July 2018, and Dr. Morgan in November 2019. Each of these psychologists opined that Plaintiff was moderately to severely limited as to many nonexertional abilities and that his mental-health impairments were not caused by substance use within the last 60 days.

The ALJ found the medical opinions authored by Dr. Arnold, Dr. Marks, and Dr. Morgan unpersuasive, primarily because they failed to account for Plaintiff's substance use, as the opinions were based, in part, on Plaintiff's self-reports that he either did not use substances or that any substance use was not recent. Plaintiff contests the ALJ's decision to discount these medical opinions. However, as the ALJ detailed, the record reflects that Plaintiff was *not* forthcoming about his substance use during these evaluations. As discussed below, Plaintiff's failure to accurately disclose his substance use consequentially impacted the psychologists' ability to assess whether his observed behavior and reported symptoms resulted from his substance use or from his impairments.

---

[49] AR 395–403.

[50] AR 532, 535.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23

a.    *Dr. Arnold*

Dr. Arnold examined Plaintiff in August 2016. During the examination Plaintiff reported he was "3-4 weeks clean and sober," he had last used illegal drugs "months ago. . . like a month ago," he began smoking crystal meth at the age of 16," and "he had cut down his crystal meth use [about two months ago when he was diagnosed with schizophrenia through Lourdes counseling crisis response] to 'just a couple times a week.'"[51] The ALJ discounted Dr. Arnold's opinion because it was based on inaccurate information about Plaintiff's substance use, including that it was inconsistent with Plaintiff's statements in a June 2016 medical record, which noted that Plaintiff said he had used meth a few days before that interview.[52]

Plaintiff correctly highlights that the cited June 2016 medical record was not one week before Dr. Arnold's August examination, but rather one month before. However, there is no indication that this timing mistake consequentially impacted the ALJ's consideration of Dr. Arnold's opinion—or the other challenged opinions. The Lourdes records indicate that Plaintiff was admitted to inpatient treatment on June 22, 2016 and released on June 30, 2016.[53] Plaintiff admitted to recent methamphetamine use to Lourdes staff, and his observed behavior was consistent

---

[51] AR 429–30.

[52] AR 26.

[53] AR 571–72, 581–606.

with such use.[54] Accordingly, even if the Lourdes records are accurately considered as being one month before Dr. Arnold's examination, there is sufficient inconsistency in Plaintiff's reports of substance use to question Plaintiff's accuracy as to such.

Moreover, the medical records—or lack thereof—during the one-month period between Plaintiff's discharge from Lourdes inpatient treatment and his psychological evaluation with Dr. Arnold reveal that Plaintiff failed to follow through with his directed treatment. For instance, there are no medical records reflecting that Plaintiff appeared for his chemical dependency assessment scheduled for July 2016.[55] And a medical record later in July indicates that Plaintiff failed to show for his scheduled individual therapy.[56]

Accordingly, Plaintiff fails to show that the ALJ consequentially erred by discounting Dr. Arnold's opinion on the grounds that it was inconsistent with Plaintiff's reports in medical records one week before the examination.[57] Instead, the ALJ rationally found the record, when viewed in its entirety, showed that when

---

[54] AR 471, 585.

[55] AR 604–06.

[56] AR 644.

[57] AR 26.

ORDER RULING ON CROSS SUMMARY-JUDGMENT MOTIONS - 15

1

2

Plaintiff abused substances his functioning decreased and when he had periods of sobriety and medication compliance his functioning increased.[58]

3

        *b.*    <u>*Dr. Marks*</u>

4

     Dr. Marks evaluated Plaintiff twice: in April 2017 and July 2018.[59]

5

Dr. Marks noted in her 2017 report that Plaintiff said he did not have a drug of

6

choice and that he was clean and sober.[60] Dr. Marks found Plaintiff to be "a limited

7

historian" and she did not have the benefit of reviewing any records.[61] She found

8

that Plaintiff's impairments would persist following 60 days of sobriety; yet, she

9

added, "He was not under the influence today but it is unclear what his past

10

history is" and she recommended that he be referred for a chemical dependency

11

assessment and treatment.[62] Again in her 2018 report, Dr. Marks noted that

12

13

14

_____

[58] AR 26. The ALJ also discounted Dr. Arnold's opinion because his unremarkable

15

findings did not support the significant limitations. AR 26. Because the ALJ

16

rationally discounted Dr. Arnold's opinion because he did not have accurate

17

information about Plaintiff's substance use, the Court need not address whether

18

this reason was a rational reason supported by substantial evidence.

19

[59] AR 763–73.

20

[60] AR 764.

21

[61] AR 763, 765.

22

[62] AR 766.

23

Plaintiff's self-reports about his purported sobriety were uncertain and she was unable to review any medical records other than her 2017 report.[63]

Contrary to Plaintiff's reports of sobriety to Dr. Marks (and to others),[64] Plaintiff also reported using methamphetamine and marijuana in October 2017.[65] Likewise, in February 2018, Plaintiff reported that his longest term of sobriety was for seven months, when he was in jail in 2016, and that he resumed use after getting out of jail, which was on March 15, 2017—a month before his first evaluation by Dr. Marks.[66]

Based on Plaintiff's inconsistent reports of substance use and Dr. Marks' own questioning as to the reliability of Plaintiff's reports of sobriety, the ALJ rationally discounted Dr. Marks' opined limitations, which were based in part on Plaintiff's reports of sobriety and without the benefit of record review.

---

[63] AR 769–71.

[64] *See, e.g.*, AR 608. During a November 2017 behavioral health evaluation, Plaintiff reported that he "has not used any drugs since his arrest in 2016 mainly because he has been under the supervision of the department of corrections. He does not know if he is receiving random UAs by his probation officer, nor could he give the name of his probation officer." *Id.*

[65] AR 623.

[66] AR 692, 535.

1

2

        c.    **_Dr. Morgan_**

3

       Plaintiff argues that, because Dr. Morgan's psychological evaluation took

4

place during an 11-month period of forced sobriety, the ALJ erred by finding

5

Dr. Morgan's opinion unpersuasive on the grounds that it was authored without

6

accurate information as to Plaintiff's substance use. This argument, however,

7

assumes that Plaintiff was incarcerated (and presumably sober while incarcerated)

8

during his November 2019 assessment with Dr. Morgan. Although Plaintiff was

9

incarcerated from about January 2019 to early November 2019, he was released

10

from custody _before_ his evaluation with Dr. Morgan, as Plaintiff informed

11

Dr. Morgan that he was living with his sister.[67] Because Plaintiff was released

12

from prison when he was assessed by Dr. Morgan, it was rational for the ALJ to

13

consider that Plaintiff was not forthcoming to Dr. Morgan about his substance use,

14

as Plaintiff did "not report any history of substance abuse or chemical

15

dependency."[68]

16

       Plaintiff's self-report to Dr. Morgan was clearly not accurate, as the record

17

reflects that Plaintiff began using methamphetamine at about age 16 and used it

18

regularly for at least 11 years.[69] And the record reflects that fairly immediately

19

after being released from jail in May 2016 Plaintiff used methamphetamine and

---

20

[67] AR 775.

21

[68] AR 780.

22

[69] AR 574, 577.

23

was resultantly observed with severe mental-health symptoms.[70] Further, after his release from his court-ordered inpatient treatment at Eastern State Hospital and related jail stay in 2017, Plaintiff resumed substance use after his discharge.[71]

The ALJ rationally discounted Dr. Morgan's opinion, which was based in significant part on Plaintiff's statement that he did not have any history of substance use.[72]

### d. _Dr. Fanto_

In addition to questioning Plaintiff's symptoms because of his inconsistent reports of substance use, the ALJ questioned whether Plaintiff was malingering. In doing so, the ALJ highlighted certain comments in Dr. Fanto's reports about Plaintiff's suspected malingering.[73] Dr. Fanto examined Plaintiff on two occasions

---

[70] AR 585, 635.

[71] AR 692.

[72] The only records that Dr. Morgan reviewed were "DSHS records." AR 769. Dr. Morgan did not indicate whether those records contained any information as to Plaintiff's substance use.

[73] _See_ AR 24 ("Dr. Fanto noted a history of suspicion of malingering while in patient care."), AR 25 (quoting AR 410 ("Dr. Fanto noted that the 'onset of [Plaintiff's] symptoms relative to his charges is perhaps a red flag in consideration of the genuineness of his current presentation.'")).

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23

and prepared a report after each examination: first, in November 2016, when Plaintiff was admitted to Eastern State Hospital, and then again in February 2017.

Plaintiff argues the ALJ erroneously determined that Dr. Fanto found Plaintiff to be malingering. To support this argument, Plaintiff highlights that 1) even though his symptoms improved during his court-ordered inpatient treatment, he continued to report auditory hallucinations, 2) an individual who is faking their symptomology would not have improved with treatment, and 3) Dr. Fanto concluded that "the information available to this evaluator at this time is consistent with a preliminary diagnosis of an Unspecified Psychotic Disorder."[74]

Dr. Fanto's preliminary diagnosis of unspecified psychotic disorder, however, was made with the following caveat, "it also remains unknown at this time whether [Plaintiff's] symptoms are the result of his substance use, particularly his use of methamphetamine, or whether an underlying psychotic disorder is present."[75] During Dr. Fanto's subsequent examination, he found that Plaintiff did not "present with any behavior consistent with an individual who was experiencing auditory hallucinations (response latency, distractibility, verbally responding to voices, son startled looks, strategies to block out voices, etc.)" and was "not demonstrating any active symptoms of a psychotic disorder that would be expected

---

[74] ECF No. 13 at 9 (citing AR 397–99 and quoting AR 410).

[75] AR 410.

ORDER RULING ON CROSS SUMMARY-JUDGMENT MOTIONS - 20

1
2
3

to interfere with his psycho-legal capacities."[76] Dr. Fanto reached these findings even though Plaintiff continued to endorse infrequent auditory hallucinations (voices through the vents).[77]

4
5
6
7
8
9
10
11
12

Dr. Fanto summarized several progress notes and found "[r]eports of [Plaintiff's] problematic behavior or symptoms gradually declined over the course of admission."[78] Plaintiff submits that his improvement during treatment reflects that he was not malingering, because if he was, he would have continued to engage in odd behavior during his inpatient stay. However, the ALJ's interpretation of Dr. Fanto's reports, along with the entire record, is rational. Dr. Fanto identified several instances in which Plaintiff demonstrated malingering.[79] And Plaintiff's comments to Dr. Fanto during the second examination indicates a possible motivation for Plaintiff to cease malingering—credit for time served:

13
14
15
16

When questioned if he thought this was likely, he responded by stating that he thought this was the worst case scenario. Mr. Romero estimated that the most likely outcome would be a plea bargain in which his most serious charge was lowered and he would receive approximately a one year sentence. He added that he was hoping to receive "time served," having already been locked up for six months and noting that the reduction of his charges to burglary in the second degree would result in a standard sentence in the four to six month range.

17
18
19

[76] AR 398, 402.

20

[77] AR 398.

21

[78] AR 397.

22

[79] AR 397.

23

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23

Regardless of why Plaintiff's odd behaviors decreased during the latter part of his inpatient treatment, Plaintiff fails to establish the ALJ mispresented Dr. Fanto's findings.

    4.   <u>Summary</u>

It was the Plaintiff's burden to show that his substance use was not a material contributing factor to his disability. Plaintiff's mental-health and substance-abuse history are complex, and it was understandably difficult for the ALJ to parse Plaintiff's symptoms resulting from substance use (methamphetamine, marijuana, and alcohol) from those resulting from his psychological disorders without substance use. This difficult task was compounded by Plaintiff's inconsistent statements about his substance use. Because Dr. Arnold, Dr. Marks, and Dr. Morgan did not have an accurate picture of Plaintiff's past or then-current drug use, the ALJ's decision to find these opinions less persuasive is a rational finding supported by substantial evidence.

The ALJ did not—as Plaintiff argues—arbitrarily substitute her own opinion but instead relied on the medical opinions which more accurately accounted for Plaintiff's substance use and the impact his use had on his nonexertional abilities. The ALJ appropriately relied on Dr. Rubin's and Dr. Harmon's opinions, and also in part the opinions of Dr. Eather and Dr. Regets, in reaching her decision that

1
2
3

Plaintiff's substance use impacted the listings and RFC assessments.[80] The ALJ's consideration of the medical record—and medical opinions—is supported by substantial evidence.

4

**B.      Step Three (Listings): Plaintiff fails to establish consequential error.**

5
6
7
8
9

At step three, the ALJ must determine if a claimant's impairments meet or equal a listed impairment.[81] The claimant has the burden of establishing that he meets or equals each listing criterion.[82] The ALJ need not recite the reasons for her step-three determination under that portion of the decision so long as the relevant evidence and underlying findings are discussed in the ALJ's entire decision.[83]

10
11
12

Here, the ALJ found that if Plaintiff's substance use was considered, Plaintiff met the criteria for Listing 12.08, as both the paragraph A criteria and

13

---

14
15

[80] *See also* AR 414–16 (Patricia Ver Ellen, M.D., found that Plaintiff's prognosis was fair if he remained abstinent from drugs).

16
17

[81] 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii); *Lewis v. Apfel,* 236 F.3d 503, 512 (9th Cir.2001).

18
19

[82] 20 C.F.R. §§ 404.1525(d), 416.920(d); *Burch v. Barnhart*, 400 F.3d 676, 683 (9th Cir. 2005).

20
21
22
23

[83] *Lewis,* 236 F.3d at 513; *see also Marcia v. Sullivan,* 900 F.2d 172, 176 (9th Cir.1990) (noting that the ALJ's unexplained finding at step three was reversible error).

1
2
3

paragraph B criteria were satisfied.[84] The ALJ then found that, if Plaintiff stopped substance use, he would not meet or equal a listing because he would only have moderate limitations as to the paragraph B criteria.[85]

4
5
6
7
8
9

Plaintiff argues the ALJ erred by failing to conduct an adequate paragraph B analysis because the ALJ, in reaching her "moderate" paragraph B findings, ignored Plaintiff's longstanding history of criminal, violent, and maladaptive behavior. As a result, Plaintiff contends the ALJ erred by not finding that he meets or equals several mental-health listings—Listings 12.03, 12.04, 12.06, and 12.08— singly or in combination.

10
11
12
13
14
15
16
17
18
19

Each of the at-issue listings requires satisfaction of the paragraph B criteria, which requires either an extreme limitation of one or a marked limitation of two of the following areas of mental functioning: understand, remember, or apply information; interact with others; concentrate, persist, or maintain pace; and adapt or manage oneself.[86] The ALJ determined that without substance use Plaintiff was moderately limited in each of these four areas of mental functioning. Plaintiff argues that, even without considering any substance use, he has, minimally, a marked limitation in 1) interacting with others and 2) adapting or managing himself.

20
21
22
23

[84] AR 23.

[85] *Id.*

[86] 20 C.F.R. Pt. 404, Subpt. P, App 1. Listings 12.00.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

        The ALJ offered more than a boilerplate step-three finding as to the

paragraph B criteria for these at-issue listings. The ALJ made specific findings as

to each of the paragraph B criterion. For instance, as to Plaintiff's ability to

interact with others, the ALJ highlighted that Dr. Rubin testified that Plaintiff's

personality disorder impacted his ability to interact with others, but that the

medical record reflected that Plaintiff generally presented as cooperative to

treating providers. Moreover, although Dr. Rubin opined that Plaintiff would have

conflict with the public, supervisors, or colleagues, Dr. Rubin opined that Plaintiff's

limitations in this regard, without substance use, were moderate.[87] The ALJ's

findings as to paragraph B's social-interaction criterion is supported by Dr. Rubin's

testimony and other substantial evidence.

        Similarly, as to Plaintiff's ability to adapt or manage himself, the ALJ

specifically explained her finding that Plaintiff has a moderate limitation if he

stopped substance use. She cited Plaintiff's own statements that he had no

problems with his personal care, did not need reminders to take medications, and

had no difficulties handling stress or changes in routine.[88] While it may be

questionable for the ALJ to rely on Plaintiff's self-reports to support this finding

because the ALJ otherwise found Plaintiff's self-reporting unreliable given his

inconsistent substance-use reports, the inpatient treatment records from Eastern

---

[87] AR 48–54.

[88] AR 23.

State Hospital reveal that Plaintiff's self-care and personal adaptation and management improved when he was not using substances.[89] Therefore, the ALJ's finding that Plaintiff experiences a moderate limitation as to adapting or managing himself when he is not using substances is supported by substantial evidence.

The ALJ did not ignore the fact that Plaintiff has a history of criminal and maladaptive behavior and that he was incarcerated during the relevant period. The ALJ considered the conflicting evidence and rationally determined that if Plaintiff is not using substances, he has moderate limitations as to the paragraph B criteria and therefore does not meet or equal a listing. Plaintiff fails to establish error.

## C.    Steps Four and Five: Plaintiff fails to establish error.

Plaintiff argues the vocational testimony relied on by the ALJ at steps four and five was without evidentiary value because it was based on an incomplete hypothetical. Plaintiff asserts that the hypothetical should have included a finding that he would have 3 to 4 incidents of arguments and/or walking off when a supervisor speaks to him, would be absent 1 to 3 days per month, and would need special supervision past the probationary period.

Because Plaintiff's argument merely restates his earlier allegations of error, which are not supported by the record, Plaintiff fails to establish error at steps four

---

[89] AR 398–99.

and five. The RFC was supported by substantial evidence and properly accounted for Plaintiff's limitations when he is not using substances.[90]

## V.    Conclusion

Accordingly, the Court affirms the ALJ's determination that Plaintiff was not disabled if he stopped the substance use. Therefore, **IT IS HEREBY ORDERED**:

1.    Plaintiff's Motion for Summary Judgment, **ECF No. 13**, is **DENIED**.

2.    The Commissioner's Motion for Summary Judgment, **ECF No. 18**, is **GRANTED**.

3.    The Clerk's Office shall enter **JUDGMENT** in favor of Defendant.

4.    The case shall be **CLOSED**.

**IT IS SO ORDERED.** The Clerk's Office is directed to file this Order and provide copies to all counsel.

**DATED** this 12th  day of November 2021.

s/Edward F. Shea<br>
EDWARD F. SHEA<br>
Senior United States District Judge

---

[90] *See Rounds*, 807 F.3d at 1006; *Magallanes v. Bowen*, 881 F.2d 747, 756-57 (9th Cir. 1989) (allowing ALJ to restrict hypothetical to those limitations supported by substantial evidence).